THE STATE v. TOM MARSHALL, Plaintiff in Error.— 297 S. W. 63.

Division Two, June 23, 1927.

**1. JUDGE: Disqualification: Change of Venue: Bill of Exceptions: Transcript of Evidence.** A motion to disqualify the special judge having been overruled, and thereafter a change of venue on account of the bias and prejudice of the inhabitants having been granted to another county in the same circuit, the action of the court in overruling the motion cannot be considered in the appellate court unless a term bill of exceptions was filed in the court in which the motion was overruled; and to attach to the record, certified and transmitted by the clerk to the transferree county, a transcript of the evidence taken on the motion to disqualify the judge, certified by the official stenographer, but not signed by the judge, nor certified by the clerk, nor included in the clerk's transcript, does not make such transcript of the evidence a part of the bill of exceptions, and therefore the alleged disqualification of the judge to hear the case is not for consideration.

**2. JURY: Motion to Quash Panel.** A motion to quash the panel of jurors, appearing only in the assignment of errors in the brief, cannot be considered on appeal.

**3. SEARCH WARRANT: Motion to Quash: Bill of Exceptions.** It is only by grace, and not by right, that a motion to quash a search warrant which is not made a part of the bill of exceptions will be considered on appeal.

**4. ———: Application to Court: Issued by Clerk: Probable Cause.** The circuit clerk, not being a judicial officer, cannot issue a search warrant upon his own finding of fact that probable cause exists. But where the application shows on its face that it was addressed and presented to the circuit court, and the order of the court recites that the prosecuting attorney comes and files his petition, praying that a search warrant be issued, and the record further recites that "whereupon said petition is seen and considered by the court and the evidence of witnesses duly sworn is heard, and its appearing to the court that the said application is supported by credible evidence, it is ordered by the court that the clerk of this court issue a search warrant as herein prayed," a search warrant thereafter issued by the clerk in the name of the State is issued upon the finding of probable cause by the court, although the warrant itself recites that the prosecuting attorney "filed before me, the undersigned clerk of the circuit court, his duly verified application, and upon the order of said court herein, it is found by me that there is probable cause to believe," etc., which are entirely useless recitals, and should be regarded as surplusage.

**5. SEARCH WARRANT: Application to Court: Proof of Probable Cause.** The existence of probable cause may be made to appear to the satisfaction of the court either by facts recited in the verified application or from evidence

stored and kept in the premises described will authorize the court to find the existence of probable cause, without a further recital of facts therein. And if the court, upon the filing of such application, or a verified application insufficient on its face, takes evidence of sworn witnesses and finds that it is supported by credible evidence, that likewise is a finding by the court of the existence of probable cause; and in the absence of any record showing to the contrary, it will be presumed that the court did its duty, and reduced the evidence to writing.

6. INTOXICATING LIQUOR: Tests: Custody of Officers. The testimony of the deputy sheriff, who served the search warrant, that the bottle he found on defendant's premises contained red liquor, and while he did not otherwise test it, it smelled like corn whiskey, and testimony of a chemist, experienced in testing the alcoholic contents of liquors, that the alcoholic content of the liquor in the bottle was fifty per cent, and the testimony of the officers that the bottle was in their custody at all times from its seizure to the trial except when it was in the hands of the chemist for examination, and that the liquor had not been tampered with, although considerable time intervened between the seizure and the trial, are admissible and sufficient to support a finding that the liquor was intoxicating within the meaning of the statute.

7. ———: ———: Effect of Evidence: Instruction. If the defendant desires an instruction on the effect of certain evidence, or the manner in which the jury should receive it, he should ask the court to so instruct.

8. EVIDENCE: Reputation. A defendant on trial may prove he has a good reputation as that reputation affects his character as a defendant; but he has no right to offer evidence to show that his reputation as a witness, for truth and veracity, is good, until it is attacked by the State.

9. INSTRUCTION: Corn Whiskey, Etc.: Definition. The words "corn whiskey," "intoxicating liquor," "potable" and "capable of being used as a beverage" are all terms in common use, having no technical significance, and it is not necessary to define them in the instructions; and particularly is a failure to define them not error when defendant presents no instruction defining them.

10. INTOXICATING LIQUOR: Possession; Punishment: Acts of 1923 and 1921: Harmless Instruction. An instruction fixing the minimum punishment at a fine of not less than one hundred dollars, whereas the section under which defendant was tried and convicted fixes the minimum punishment at a fine of two hundred dollars, is an error favorable to defendant, although he is fined two hundred dollars by the verdict.

11. INSTRUCTION: Assignments. An assignment in the motion for a new trial that the court erred in refusing instructions designated by certain numbers lacks in particularity. Nevertheless, they are so far considered as to demonstrate that no error was committed in refusing them, because they are argumentative and the matters to which they refer are covered by others given.

12. ———: Proof of Every Material Fact. An instruction requiring the jury to find defendant not guilty "if the State fails to prove any material fact to your satisfaction beyond a reasonable doubt" should be refused. The State may fail to prove satisfactorily many material facts it attempts to prove, and yet make out a case on the facts it does prove.

13. ARGUMENT TO JURY: Excluded: Reprimand. If the court sustained the objections to the remarks of the prosecuting attorney, and told the jury to disregard them, the court did not err in refusing to reprimand him where there was no request for a reprimand.

14. ———: **Prevalence of Crime.** The prosecuting attorney has a right, in his argument to the jury, to call attention to prevalence of crime in the community; to urge the jury to do their duty and uphold the law; and to draw inferences from conditions as to the effect of failure to uphold the law.

15. ———: ———: **Bootlegging Practice.** In the trial of a defendant for the possession of intoxicating liquors, a reference to a "bootlegging practice" by the prosecuting attorney in his argument to the jury, in the expression, "We are hoping to stop this bootlegging practice, this practice that has ruined boys and men, homes and women; give this defendant a fair and impartial trial, but give the State and the people too a square deal and fair consideration," should be avoided, since the defendant is not charged with selling liquor, a different crime; but where the objection was not to the "practice of bootlegging," but only to boys ruined and homes wrecked, and there is no showing of what argument had been made on behalf of defendant, it will not be held, considering the discretion of the court to say whether the reference was harmful, and where there was no request for a reprimand, that reversible error was committed in not sustaining the objection and in not rebuking the attorney for using it.

Corpus Juris-Cyc. References: **Courts**, 15 C. J., Section 512, p. 1081, n. 65. **Criminal Law**, 16 C. J., Section 1017, p. 539, n. 55; Section 1538, p. 751, n. 87; Section 2235, p. 893, n. 31; Section 2240, p. 896, n. 85; Section 2253, p. 906, n. 7; Section 2258, p. 909, n. 52; Section 2360, p. 966, n. 78; Section 2412, p. 998, n. 66; Section 2476, p. 1036, n. 62; Section 2482, p. 1041, n. 15; Section 2500, p. 1058, n. 37; Section 250, p. 1063, n. 85; 17 C. J., Section 3332, p. 62, n. 94; Section 3421, p. 130, n. 84; Section 3461, p. 169, n. 3; Section 3700, p. 345, n. 42. **Intoxicating Liquors**, 33 C. J., Section 494, p. 753, n. 29; Section 527, p. 774, n. 14; p. 775, n. 18. **Searches and Seizures,** 35 Cyc., p. 1266, n. 13, 14, 15; p. 1267, n. 18. **Witnesses**, 40 Cyc., p. 2644, n. 15; p. 2645, n. 19.

Error to Shelby Circuit Court.—*Hon. Charles T. Hays,* Judge.

AFFIRMED.

*Matthews & Jones, Waldo Edwards* and *Wm. M. Van Cleve* for plaintiff in error.

(1) It is apparent from the reading of this search warrant that it was filed before the circuit clerk, and that it was issued by the circuit clerk upon a finding made by the circuit clerk. The circuit clerk is not a judicial officer. He has no judicial authority or discretion, and he cannot make a finding of facts and cannot perform any judicial functions, hence, any search warrant issued by the circuit clerk is absolutely illegal and void. State v. Declue, 267 S. W. 45; State v. Tunnell, 259 S. W. 129; State v. Owens, 259 S. W. 100; State v. Lock, 302 Mo. 400. (2) The search warrant was illegal and void and it necessarily follows that the court erred in permitting the witnesses, Williams and Meisner, to testify as to any information they obtained by reason of the service of such search warrant. (3) Serious error was committed in permitting Williams and Stokes to testify as to

the alcoholic contents of the liquid seized, on the day of the trial, which did not confirm the testimony to the alcoholic contents of the liquor on the date of the alleged finding of the same.   (4)   The defendant should have been granted a new trial on account of the persistent misconduct and improper remarks of the prosecuting attorney and assistant counsel for the State in their arguments of this case to the jury.   (5)   The special judge called in to try this case was disqualified by an affidavit made by the defendant, supported by the affidavits of two credible persons.   Sec. 3991, R. S. 1919. Said special judge should have disqualified himself.   State v. Gilham, 174 Mo. 671; State v. Sechrist, 226 Mo. 574; Ex parte Howell, 200 S. W. 72. (6)   The disqualification of a judge under Section 3991, is not a change of venue.   State ex rel. McAllister v. Slate, 278 Mo. 577.

*North T. Gentry*, Attorney-General, and *J. D. Purteet*, Special Assistant Attorney-General, for defendant in error.

(1)   The search warrant is valid.   The petition on which it is based is in proper form and was correctly filed in the circuit court. The court, having found probable cause therefrom and the showing made thereon, ordered the clerk of the circuit court to issue the warrant.   Circuit courts are empowered and authorized to issue search warrants.   Laws 1923, sec. 25, p. 244; State v. Hall, 279 S. W. 106; State v. Halbrook, 279 S. W. 397; State v. Locke, 302 Mo. 400; State v. Coleman, 259 S. W. 432.   All averments in the warrant, contrary to the order of the court, as shown by the record entry, are surplusage and cannot vitiate the order of the court.   (2)   The court properly overruled defendant's motion to quash the jury panel.   Motions of this character do not prove themselves.   The record shows that no evidence was introduced in support of the motion, consequently, there is nothing presented for this court to review.   Furthermore, the assignment was not saved in the motion for new trial.   State v. Murphy, 292 Mo. 287.   (3)   The court properly declined defendant's offer of evidence, tending to show his good reputation for truth and veracity.   Evidence of defendant's reputation for truth and veracity is inadmissible when not attacked by the State.   His general reputation for truth and veracity was not an issue in the case.   Underhill, Criminal Evidence (3 Ed.) 136; State v. King, 78 Mo. 555; State v. Taylor, 293 Mo. 210; State v. Beckner, 194 Mo. 292.   (4)   The court properly admitted the testimony of witnesses Jack Williams and J. B. Stokes.   Their evidence was competent and relevant for the purpose of showing that the liquor found on defendant's premises, was, in fact, intoxicating.   The liquor or liquids were properly identified as that which the officers seized during the search.   The State is under no burden of showing that the liquor was intoxicating at any par-

ticular time. A showing that the liquor obtained from the defendant, was, in fact, intoxicating, is sufficient. State v. Griffith, 279 S. W. 135; State v. Sherlock, 273 S. W. 143; State v. Combs, 273 S. W. 1039. (5) Defendant is in no position to complain of the improper remarks made by the prosecuting attorney in argument of the case to the jury. In each instance, save one, of objection interposed, he was sustained by the court and the jury instructed to disregard said remarks. The remark of the prosecuting attorney, to which the court refused to sustain defendant's objection, does not constitute reversible error. Defendant's rights were not prejudiced by anything contained therein. The remark was evidently favorable to defendant. State v. Tracy, 294 Mo. 390; State v. Cooper, 271 S. W. 475; State v. Harvey, 214 Mo. 411; State v. Murrell, 289 S. W. 859; State v. Rogers, 253 Mo. 415; State v. Sherman, 264 Mo. 384-5; State v. White, 299 Mo. 611; State v. Rasco, 239 Mo. 579; State v. McBride, 231 S. W. 594. (6) The special judge called to try the case by the regular judge, properly refused to disqualify himself on the alleged grounds of bias and prejudice. Defendant was entitled to only one so-called change of venue from one judge to another on the grounds of bias and prejudice. Sec. 3991, R. S. 1919, applies only to the regular judge. State v. Sanders, 106 Mo. 188; State ex rel. McAllister v. Slate, 278 Mo. 570.

WHITE, P. J.—August 17, 1925, defendant, charged with possession of intoxicating liquor, was found guilty by a jury in the Circuit Court of Shelby County, and punishment assessed at a fine of $400, and imprisonment in the county jail for one year. The charge was a misdemeanor, under Section 6588, Revised Statutes 1919, as amended in the Act of 1921. [Laws 1921, p. 414.] The defendant in the trial court raised certain constitutional questions which were ruled against him. Accordingly he sued out a writ of error in this court which has jurisdiction.

On January 30, 1925, the defendant operated a soft-drink parlor, on Deed Avenue, in the city of Macon. On that day the Deputy Sheriff of Macon County, Jack Williams, armed with a search warrant, searched the premises there and found a quart bottle about one-third full of corn whiskey; also found other intoxicating liquor, according to the testimony of the officer. The defendant strenuously objected to the sufficiency and the competency of the testimony in relation to that matter. He testified that he sold soft drinks, jobbed empty bottles, etc., but handled no intoxicating liquor. He was present at the time the deputy sheriff searched the place, and denied that any intoxicating liquor was found. He offered evidence to the effect that his general reputation for truth and veracity was good. The evidence was excluded on objection of the State. Before the trial

317 Mo. Sup.—27.

he filed a motion to quash the jury panel, a motion to quash the search warrant, a motion to quash the information, and a motion to disqualify the judge, all of which were overruled, and each of such rulings is assigned here as error.

The information was filed in the Circuit Court of Macon County. An application for change of venue was filed before Judge Drain of that court, and was sustained, and Judge Hayes of the Tenth Judicial Circuit was called to try the case. The defendant then filed an application for disqualification of Judge Hayes, which was overruled. The defendant then filed application for change of venue on account of bias and prejudice of the inhabitants of Macon County. This application, supported in due form by proper affidavits, was sustained, and the case was sent to Shelby County, in the same circuit as Macon County, where it was tried.

I.  The plaintiff in error complains of the refusal of Judge Hayes to disqualify himself on appellant's motion. This motion was filed and this ruling had in Macon County. No term bill of exceptions was filed in Macon County. The court took evidence on that motion and certain records were introduced. The record **Bill of** and proceedings in Macon County were certified by **Exceptions.** H. S. Easley, Clerk of the Circuit Court of Macon County, and transmitted to Shelby County. Attached to that record is what is designated as a bill of exceptions, purporting to contain the evidence taken on a plea to the jurisdiction, or rather the motion to disqualify Judge Hayes. This document purports to be certified by the official stenographer. It is not included in the clerk's transcript, it is not certified by the clerk, it is not signed by the judge; there is nothing to show that it was ever filed in Macon County. It is not incorporated in the bill of exceptions filed in Shelby County, and could not properly be incorporated in that bill of exceptions. In order to be a matter of record for our consideration it would have to be incorporated in a bill of exceptions and duly filed in Macon County. Therefore, the alleged disqualification of Judge Hayes to hear the case is not before us for consideration.

II.  Error is assigned to the overruling by the court of the motion of plaintiff in error to quash the panel on the ground that the statute was not complied with in impaneling the jury. All we know about that appears in the assignment of errors in the brief. No such motion appears in the record which we have for con**Jury.** sideration. It is not in the bill of exceptions. If it were it would not prove itself. [State v. Murphy, 292 Mo. l. c. 287.] There is no evidence in the record showing that the jury was not properly

impaneled according to law. No motion to quash the information appears in the bill of exceptions.

III. It is next claimed that the motion to quash the search warrant was improperly overruled, because such search warrant was invalid for several reasons mentioned, and the search was in violation of the defendant's constitutional rights.

The application for a search warrant was filed in Macon County. A copy of it was sent with a transcript to Shelby County. The motion to quash does not appear in the bill of exceptions filed in Shelby County. We might on that account refuse to consider the matter, but the court took evidence upon the applica-

**Search Warrant: Motion to Quash.** tion. The application, the search warrant, and the order issuing it were introduced in evidence. In taking that evidence the court treated it as if the motion were present, and since a copy of it was in the transcript from Macon County, we will consider it. We have to strain a point to consider this evidence for it does not appear under the heading "Bill of Exceptions." In order to consider it we will presume the heading is misplaced.

The application for the search warrant was presented by the prosecuting attorney, verified, stating that in a certain building in the possession of Tom Marshall and operated as a soft-drink parlor, describing the location of the premises in the **Application.** City of Macon, County of Macon, "intoxicating liquor is being unlawfully manufactured, sold, stored and kept," etc., and praying for a search warrant. The search warrant was signed by the Clerk of the Circuit Court of Macon County, January 30, 1925. It recites that Glenn B. Evans, prosecuting attorney, on that day "filed before me, the undersigned Clerk of the Circuit Court," etc., his duly verified application, etc., then concludes as follows:

"Be it known from the facts set forth in the said verified petition and showing thereby and thereupon made (and upon the order of said court herein), it is found *by me* that there is probable cause to believe that the laws of the State of Missouri," etc., "are being violated."

It commanded the sheriff to make the search.

"Given under my hand this 30th day of January, 1925, at my——

"H. S. EASLEY, Clerk, Circuit Court of Macon

County, Mo."

The point is made that the circuit clerk, not being a judicial officer, could not make a finding of fact, and could not order the warrant. There is no doubt about the correctness of the position that the clerk could not find probable cause and issue the search warrant on his own authority.

The argument of plaintiff in error runs thus: the recital in the search warrant that the application was "filed before me the undersigned clerk," shows it was not filed in the court. The further recital "it is found by me that there is probable cause," means that the finding was made by the clerk; that it was the clerk to whom the application was presented, who made the finding of probable cause, and who ordered the issuance of the warrant. The application purports to be presented to the circuit court, because it begins, "In the Circuit Court of Macon County," and continues, "Your petitioner prays." It is therefore addressed to the circuit court. The search warrant then was issued in the name of the State of Missouri.

The order of the circuit court in relation to the matter recites: "Now comes Glenn B. Evans, Prosecuting Attorney of Macon County, and files his petition, praying that the search warrant be now issued," etc. Then follows a description of the premises, and statements in the application. It proceeds: "Whereupon the said petition is seen and considered by the court and the evidence of witnesses duly sworn is heard in support thereof. And it appearing to the court the said application is supported by credible evidence, it is ordered by the court that the clerk of this court issue a search warrant as herein prayed."

The recital in the search warrant itself that upon "showing made and upon the order of the court" the finding was had, the order reciting that the petition for the search warrant was filed in the court, that the court took evidence upon it, and ordered the issuance of the search warrant—all this sufficiently proves that the application was presented to the court and the court found the existence of probable cause.

Section 25, Laws 1923, page 244, provides that upon the filing of an application, and it appearing to the satisfaction of the court that there is probable cause, a search warrant shall be issued "which search warrant shall substantially recite the facts set forth in said petition, and it shall thereupon be the duty of the officer executing such search warrant," etc. The search warrant is not required to recite the order of court finding probable cause. It is entirely sufficient for the purposes of the officer that the facts stated in the petition are recited so that he may know the place to be searched. Therefore the recital in the warrant of the finding of probable cause by the clerk may be regarded as surplusage.

The order of the court shows the probable cause was found by the judge. The clerk's loose method of writing the warrant does not nullify the order. We cannot presume that the court ordered one search warrant and the clerk issued another. Only one was authorized and that must have been the one issued.

While the order of the court does not in express terms say that the court found probable cause, it does say that from the evidence of witnesses the application was supported by credible evidence, which application alleged that intoxicating liquor was kept at the place mentioned. Necessarily if the court found that evidence of that fact was credible, he found probable cause. The existence of probable cause is a conclusion from the facts found.

It is further claimed that the search warrant is invalid because the application does not state the facts upon which the prosecuting attorney knows that intoxicating liquor was kept at the place mentioned. It states directly that intoxicating liquor was stored and kept there. This, in some jurisdictions, is held to be a mere conclusion and insufficient. In recent cases we have held that sufficient in this State. Aside from that, the court here, instead of taking the application as conclusive, took evidence of witnesses who were sworn, found that the application was supported by credible evidence, and for that reason found probable cause. Under Section 25 of the Act of 1923, if it shall appear to the satisfaction of the court, ''either from the facts set forth in said petition or from evidence heard thereon that there is probable cause, . . . he may cause to be issued thereon a search warrant.'' In the case of State v. Stevens, 292 S. W. 36, l. c. 37-38, in an attack upon a search warrant, in order to sustain its validity, we held it was sufficient if it appeared to the satisfaction of the court that there was probable cause, and that might appear either from the petition itself or from the evidence heard thereon. If the application was insufficient on its face to authorize the finding of probable cause, either from insufficient statement of facts or for any other reason, and the court became satisfied from evidence which he took at the time that there was probable cause, he would be authorized to issue the warrant. Under Section 11, Article II, of the Constitution, the existence of probable cause need not necessarily appear in the application for the warrant. But it must be ''supported by oath or affirmation reduced to writing.'' The record is silent as to whether the evidence in this case was reduced to writing. We may presume that the court did its duty in that respect. The evidence taken or the motion to quash the search warrant throws no light upon the matter. The defendant made *no point* that evidence in support of the application for the warrant *was not in writing*, but confined his objections to other alleged infirmities considered above.

We think the search warrant valid, so far as the record shows.

IV. Error is assigned to the admission of the evidence of Deputy Sheriff Williams, who testified to the finding of corn whisky in defendant's place of business, and of J. B. Stokes, who testified to

its alcoholic content. Williams testified that he found the bottle containing the liquid, which he thought was corn whisky. He did not test it, but he smelled it; he had experience in matters of that kind in enforcing the prohibition law, and swore that to the best of his knowledge it was corn whisky. The bottle was marked "Exhibit A," and placed in the hands of the sheriff. There seems to be no objection on the ground that the bottle was not in custody of the officers all the time. Stokes testified that he was a graduate of a medical college, and that he had experience in testing alcoholic content of liquids by the specific gravity. He took Exhibit A and made a test showing that its alcoholic content was fifty per cent. One objection is that because the liquor was tested on the day of trial the jury had no right to consider it. There was no evidence, it is argued that it was in the same condition as when it was found—that it had not been tampered with.

*Custody of Liquor.*

Glenn Evans, prosecuting attorney, was sworn for the State and testified that the sheriff got the bottle containing Exhibit A, and other bottles, from his vault; that he had the bottles in his custody all the time after the sheriff delivered them to him; that the bottles which were delivered to him by the sheriff were the bottles which he delivered to Dr. Stokes for testing, and that after Dr. Stokes had tested them he returned them to the sheriff. The evidence is sufficient from which the jury could find that the bottles taken by the deputy sheriff in his search were kept in the custody of the officers, without change, from the time they were taken until the time they were produced at the trial. The evidence was admissible and sufficient from which the jury could find that the liquor found was intoxicating liquor within the meaning of the statute.

V. It is further claimed that the court should have instructed the jury upon that feature of the evidence. The jury were required to find in due form the facts necessary to convict. If the defendant desired or cared to instruct upon the effects of certain evidence, or the manner in which they should receive certain evidence, he should have asked the court so to instruct. Absent such request there was no error in failing to instruct upon it. It is claimed further that Williams and Stokes were not qualified to testify as to the quality of the liquor. We think the evidence is sufficient to show that Stokes was qualified, and that he made proper tests.

*Effect of Evidence: Instruction.*

VI. Plaintiff in error claims there was error in the action of the court in refusing to allow him to prove his general reputation in the community in which he lived. He offered a witness who said

he had·long known the defendant, Tom Marshall, and was asked if
he was acquainted with Marshall's reputation for
**Reputation.**   "truth and veracity."· On objection of the State the
evidence was excluded.  The defendant then offered to prove by
three other witnesses that the defendant's reputation for truth and
veracity in the community was good, and the court excluded the
evidence.  The rule is that a defendant on trial may prove he has
a good reputation, as that reputation affects his character *as a·de-
fendant*.  Defendant has no right to offer evidence to show that
*his reputation as a witness*, for truth and veracity, is good until
it is attacked by the State.  That is the universal rule.  [40 Cyc.
pp. 2643, 2645; State v. Beckner, 194 Mo. 1. c. 292.]  Therefore
there was no error in excluding that evidence.

VI.  Error is assigned to the failure of the court to define such
terms as "corn whisky." "intoxicating liquor," "potable," "ca-
pable of being used as a beverage."  They are all terms
**Defining**    in common use and defendant did not ask such
**Terms.**      definition nor present an instruction defining· them.
Being terms having no ·technical significance, it was not nec-
essary to define them.  [Page v. Payne, 293 Mo. 1. c. 623; Sims
v. Spelman, 209 Mo. 1. c. 196.]  "Corn Whisky" is a term so well
known and understood in Missouri that no definition could· il-
luminate it.  The same may be said of "intoxicating liquor."  The
word "potable" has no technical significance.  No amplification
could explain the expression, "capable of being used as ·a bever-
age," better than the words exactly used.  They are all expressions
used in the statute.  They are not technical in the sense that they
have any special significance as so used.

VII.  It is claimed that instruction numbered 2 was erroneous,
because it fixed the range of punishment at a fine of not less than
one hundred dollars, nor more than one thousand dollars; and by
imprisonment in the county jail for not less than
**Punishments.**   thirty days nor more than one year; that this is the
penalty fixed by Section 6604, Revised Statutes 1919, which was
expressly repealed by the Act of 1923.  The prosecution in this case
was· under Section 6588, Revised Statutes 1919, as amended by the
Act of 1921 (See Laws 1921, p. 414), and the penalty for such viola-
tion is provided by Section 22 of the Act of 1923 (Laws 1923, p.
243).  That section provides a penalty ·for violation of any of the
provisions of Article 7, Chapter 52, which contains Section 6588,
Revised Statutes 1919, wherein the punishment for the first con-
viction shall be a fine of not less than $200 nor more than· one
thousand dollars, or by imprisonment for not less than thirty days

nor more than one year. The penalty fixed by the statute for the offense of which the defendant was found guilty was exactly the same as that mentioned in the instruction except that the minimum fine was $200 instead of $100. That doubtless was error, but error favorable to the defendant, of which he cannot be heard to complain.

VIII. Plaintiff in error complains of the refusal of instructions asked by him, numbers 1-A, 2-A, 3-A, 4-A and 5-A. The assignment of error in that regard in the motion for new trial **Instructions.** is lacking in particularity. [State v. Standifer, 289 S. W. 856.] Nevertheless, we have examined those instructions.

1-A is argumentative, regarding reasonable doubt, which is properly covered by Instruction 3, for the State, and D-1 and D-2 for the defendant. 2-A is argumentative, states abstract propositions, and the matter is properly covered in Instruction D-2, for defendant. 3-A is covered by Number 3 for the State.

4-A was properly refused because it requires the jury to find the defendant not guilty "if the State fails to prove any material fact to your satisfaction beyond a reasonable doubt." The State might fail to prove satisfactorily many material facts which it **Every** attempted to prove, and yet make out a case on the facts **Material** it does prove. It would fail only if it did not prove any ma-**Fact.** terial issue or proposition necessary to constitute guilt.

IX. Complaint is made of remarks of the State's attorney, and it is claimed a new trial should have been granted on account of his improper remarks. The prosecuting attorney in the **Argument** course of his argument said he believed the defendant **to Jury.** had violated the law; that it was for the jury to say from the evidence in the case. An objection by the defendant was sustained, and the court said the argument was improper, and instructed the jury to disregard it. The prosecutor then said: "We have interests over the county." On objection the court ruled the statement improper, instructed counsel to avoid that line of argument, and directed the jury to disregard it.

Later the prosecutor proceeded as follows: "We do have a right to expect at your hands that you will uphold the law; that as men you will regard the evidence of the State and stand for the enforcement of the laws of your country. Not to seek vengeance on Tom Marshall, nor any other individual—we are not seeking that; but we are hoping thereby to stop this bootlegging practice, this practice that has ruined boys and men, homes and women." An objection to that remark was overruled.

The prosecutor then continued: "Take it, Gentlemen, and do what is right about it. Give this defendant a fair and impartial

trial; but give the State and the people . . . give them too a square deal and fair consideration."  •

It will be noted that the court sustained the first and second objections offered, and instructed the jury to disregard the statement of counsel for the State, although appellant strenuously insists that the court erred. The court was not asked to reprimand the State's attorney. He could not be convicted of error in failing to make a ruling which he was not asked to make. On the contrary, he ruled in both instances exactly as defendant's counsel asked him to rule.

On the third objection the prosecuting attorney spoke of the necessity of upholding the laws, of the hope to stop the bootlegging practice that had ruined boys and men, homes and women, and, after the objection the prosecutor admonished the jury to do what was right about it; to give the defendant a square deal, and give the State and the people a square deal. The court in that instance declined to sustain the objection.

The prosecutor has a right to call attention to the prevalence of crime in the community; to urge the jury to do its duty and to uphold the law; and to draw inferences from conditions as to the effect of failure to uphold the law. It is largely a matter within the discretion of the court. [State v. White, 299 Mo. 1. c. 612-613; State v. Hart, 292 Mo. 1. c. 98-99; State v. Reppley, 278 Mo. 343.] Of course, we do not know what argument was made on behalf of the defendant. The reference to the bootlegging practice in the attorney's speech, should have been avoided. If the defendant, under color of lawful business, was surreptitiously and secretly dealing in intoxicating liquor, he was in fact a bootlegger. But he was not charged with selling liquor. The prosecutor did not characterize him as a bootlegger. The most that can be inferred is that he was engaged in a business which encouraged bootlegging.

The only objection made was that the argument was improper "as to what boys it has ruined or homes it has wrecked. There is no evidence of any homes being ruined" and there was no evidence "as to intoxicating liquor."

The reference to ruined homes was argumentative; an inference from prevailing conditions regarding illegal liquor traffic. An argument is not subject to reprimand for lack of evidence to support it unless the speaker states *specific facts* which are unproven. Where he draws inferences, if his conclusion would reasonably arise from the general situation shown by the evidence, he is not out of order though his reasoning is unsound.

There was no objection because the argument suggested the commission of crimes other than the one for which defendant was on

trial, or because defendant was not charged with selling liquor. Nor is any such objection made here.   The trial court had no opportunity on the objection made, to reprimand the prosecutor for lugging a charge of other crimes into the case.   Counsel argue here that the court should have reprimanded the prosecutor, but no such request was made at the time.   In the heat and hurry of argument, the trial judge cannot be convicted of error for failing to rule in accord with a reason not presented to him.

Besides, considering the discretion of the court in that matter, as to whether it was harmful, we are unable to say that a reversible error was committed in not sustaining the objection and rebuking the attorney for using it.

We find no reversible error in the record, and the judgment is therefore affirmed.   All concur.