443 P.2d 427

**The STATE of Arizona, Appellee,**
**v.**
**Alfred ROJAS, Appellant.**
**No. 1758.**

Supreme Court of Arizona,
In Banc.
July 11, 1968.

Brown, Vlassis & Bain, by George Vlassis, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., and Robert K.

Corbin, County Atty., Maricopa County, for appellee State of Arizona.

UDALL, Vice Chief Justice:

This is an appeal by the appellant-defendant from a judgment of conviction, and the sentence thereon, for the crime of murder in the second degree.

An information was filed against the defendant in the Superior Court of the County of Maricopa, State of Arizona, on June 16, 1966 charging him with the crime of murder. Arraignment was held on the 29th of June, 1966 at which time defendant was represented by counsel and entered a plea of not guilty.

The record shows that on August 19, 1966 the defendant was present in court with counsel when a motion was made by the County Attorney to permit defendant to withdraw his plea of not guilty to the charge of murder, which motion was granted. Thereupon the defendant was permitted to enter a plea of guilty to an amended information charging him with murder (second degree).

On September 26, 1966 defendant was sentenced by the court to serve a term of not less than forty years to life imprisonment in the Arizona State Penitentiary at Florence, Arizona, commencing January 2, 1966.

The facts and circumstances surrounding the commission of the alleged crime are as follows: At approximately 9:30 a. m. on January 2, 1966, the defendant stabbed Olga Figueroa with a ten-inch butcher knife while at her residence in Phoenix, Arizona, from which wound the victim died on January 10, 1966. Minnie Montoya, an eye witness to the incident, testified at the preliminary hearing and, after identifying the defendant as the assailant, stated that defendant and the victim were in the victim's living room when defendant got up and went into the kitchen and procured a large knife. Her testimony is as follows:

Q "Were the three of you together there in the room?

A "In the living room, that's right.

Q "What happened when he got the knife?

A "Then he went toward Olga and tried to hit her in the front, and then she turned around. That's when he hit her.

Q "What do you mean, he hit her?

A "Well, he stabbed her in the back.

Q "With the knife?

A "That's right.

Q "Did he say anything to her after he came out of the kitchen?

A "No, he didn't, until he was on the sofa and he said, 'I'm going to kill you.'

Q "He said that to Olga?

A "That's right."

The first officer who arrived at the scene of the stabbing was Police Patrolman McKnight. His testimony given at the preliminary hearing, reads in part as follows:

Q "What did you do when you arrived?

A "I was answering a family fight call. There was a—

Q "No, not the call, officer. When you arrived at the scene, what did you do?

A "When I arrived at the scene, I went into the house and asked what had happened. A person, I don't recall who, said that a woman had been stabbed. And at that time I asked who had been stabbed and this woman who was sitting in a chair just to the right of the entrance to the living room—I walked over to her and ascertained that she had been stabbed. She did have a small amount of bleeding on her back.

Q "What did you do next, officer?

A "She was crying. I tried to quiet her down a little bit and find out what had happened. I asked her what had happened and she said that she had been stabbed.

Q "O.K. What next?

A "I asked her who had stabbed her and she pointed to her right and said, 'He did.' (pointing at defendant)

Q "What happened next?

A "I turned around and faced this person who was standing against the wall to her right and he started grinning and said, 'Yes, I stabbed her, and I'd do it again if I had to.' And at that time I placed Mr. Rojas under arrest."

The record did not disclose that there was any serious quarrel nor any threats by any one of those present before the defendant committed the violent act of stabbing the victim.

The defendant first contends that although he was represented by counsel he was not fully advised of the gravity of the charge of second degree murder to which he plead guilty. He argues that the court erred in not making a searching inquiry into the facts surrounding the commission of the offense, and he now asserts that he did not voluntarily, intelligently and knowingly, enter a plea of guilty to the charge set out in the amended complaint.

The minutes of the court that were made on that date, August 19, 1966, read as follows:

"Defendant withdraws his former plea of not guilty as entered heretofore and now enters his plea of guilty to the amended information, charging murder (second degree) a felony. Defendant is questioned in detail as to entering a plea of guilty and advised as to the consequences of entering a plea of guilty. The defendant states that he understands. The court finds that the defendant voluntarily, knowingly and intelligently entered his plea of guilty to the amended information."

Rule 182 of the Rules of Criminal Procedure, 17 A.R.S., reads as follows:

"When the defendant is not represented by counsel the court shall not accept a plea of guilty until it has explained to the defendant the consequences of such plea, but a failure of the court to explain the consequences of the plea shall not affect the validity of any proceedings in the action."

Thus, the court, while not required to do so under Rule 182, did question the defendant in detail regarding his entering a plea of guilty to the charge of murder in the (second degree), and advised him of the consequences of entering a plea of guilty. The court was reassured in the matter by defendant's statement that he understood what was happening.

In view of the nature of the evidence against the defendant it would appear that his appointed counsel served him well, by bargaining with the State's attorney to reduce the charge from first degree to second degree murder. It is clear from the record that defendant was advised of the nature and consequences of a plea of guilty and that the court had substantial evidence to support its ruling that defendant acted voluntarily, knowingly and intelligently at the time he entered his plea of guilty to the lesser offense. See State v. Kruchten, 101 Ariz. 186, 417 P.2d 510; State v. Stewart, 3 Ariz.App. 178, 412 P.2d 860.

The defendant next contends that it was error not to hold a hearing pursuant to defendant's motion for an examination of his mental condition under Rule 250 of the Arizona Rules of Criminal Procedure. In response to defendant's motion for a hearing under Rule 250, the court appointed two disinterested qualified experts, Dr. Thomas F. Kruchek and Dr. Samuel Wick, to examine the defendant with regard to his present mental condition and to testify at a hearing. Defendant was examined by the two experts and a written report was submitted by each of them to the court, as will appear from the records in the case. Both experts reported the defendant was aware of the charges against him and the possible consequences; that he knew the

difference between right and wrong and was able to assist counsel in his defense.

On the 15th day of August 1966 the court entered an order that a hearing be held to determine defendant's ability to stand trial under Rule 250 of the Rules of Criminal Procedure. The record does not disclose that a hearing was ever held to determine the defendant's mental condition as provided under the Rule; however, the minutes do disclose that on the 19th day of August, 1966, defendant was permitted to withdraw his plea of "not guilty" to the crime of murder and was permitted to enter a plea of guilty to the crime of murder [second degree].

It is the contention of the state that since the defendant voluntarily entered a plea of guilty to a lesser offense it obviated the necessity of the court holding a hearing as provided under Rule 250. We do not agree with this contention.

The Rule provides that the two qualified experts appointed to examine the defendant will testify at a hearing regarding defendant's mental condition. It is further provided under Rule 250, subd. B: "If the court, after the hearing, decides that the defendant is able to understand the proceedings and assist in his defense it shall proceed with the trial."

■ It would appear that since the question of the sanity of defendant had been raised and a hearing ordered it would be necessary for a hearing to be held before the court could proceed, either with the trial of defendant or in a proceeding whereby the defendant entered a plea of guilty. In State v. Westbrook, 101 Ariz. 206, 417 P.2d 530, we held that even though a "250 hearing" had been conducted to determine the mental condition of the defendant before trial, the case must be reversed on the principle ground that the "250 hearing" held for defendant had not determined whether the defendant was insane or mentally defective to the extent that he was unable to intelligently and competently

waive his constitutional right to the assistance of counsel and conduct his own defense.

■ Since the trial court did not conduct a hearing to determine defendant's ability to understand the proceedings and to assist his counsel at trial, we are of the opinion that the court could not accept a plea of guilty by the defendant to the crime of murder (second degree).

■ This case will be remanded to the Superior Court of Maricopa County for a limited hearing pursuant to Rule 250 of the Rules of Criminal Procedure, to determine whether the defendant, at the date he entered his plea of guilty to murder [second degree], understood the proceedings and was able to assist in the determination of his defense prior to entering his plea. State v. Maloney, 101 Ariz. 111, 416 P.2d 544.

If the trial court decides that the defendant understood the proceedings which transpired at the time he entered his plea of guilty and was able to assist in his defense, it will notify this court by causing a certified copy of the minute entry to be transmitted to the clerk of this court. If no objection to the ruling is presented to this court within fifteen days, an order will be entered affirming the conviction.

If the trial court finds, after conducting the hearing to determine defendant's mental condition, that the defendant on that date [August 19, 1966] was not able to understand the proceedings and assist in his defense before entering his plea of guilty to murder [second degree], then the court is directed to enter an order setting aside the plea of guilty and proceeding thereafter in conformity with law. State v. Maloney, supra; State v. Stevenson, 101 Ariz. 254, 418 P.2d 591.

Remanded with directions.

McFARLAND, C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.