485 P.2d 832

**STATE of Arizona, Appellee,**

v.

**Doyle Wayne WILLIAMS, Appellant.**

No. 2149.

Supreme Court of Arizona,
In Banc.
June 11, 1971

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Cohen, Gerst & Groseclose, by Stephen A. Gerst, Phoenix, for appellant.

STRUCKMEYER, Chief Justice.

Defendant, Doyle Wayne Williams, was found guilty of murder in the first degree and his punishment was fixed at life imprisonment. From the conviction and sentence thereon, he appeals.

Defendant, age 20, was operating a pickup truck belonging to the deceased victim, Onnie Hightower, when he was stopped on the evening of October 26, 1969 at about 8:20 p.m. by the Phoenix police for speeding. The police officers saw alcoholic beverages in the cab of the truck and detected the smell of alcohol on defendant's breath. They arrested him and his companion, Herbert Chambers, age 19, on the charge of minors unlawfully in possession of alcoholic liquors. Both were detained overnight in the city compound and on the following day were charged with robbery and murder in connection with the death of Hightower. Hightower's body was discovered by a neighbor some twelve hours after the arrest. Defendant was driving the Hightower pickup truck when he was stopped for speeding, and was also wearing a pair of shoes and in possession of a pocket knife and a watch, all of which belonged to Hightower. His companion was in possession of a large number of unusual coins which were also identified as the property of the deceased. Defendant requested and was granted a trial separate from his co-defendant.

In this appeal, defendant first urges that it was prejudicial error for the trial court to permit testimony concerning an attempted flight by Chambers at the scene of the arrest. It is asserted that the evidence of attempted flight defeated one of the purposes of a separate trial, greatly contributing to the jury's verdict of guilty.

Without objection, a police officer testified that Chambers jumped out of the truck and ran when the pickup truck was first stopped. Prior to the examination of a second police officer, the defendant objected to any testimony concerning Chambers, citing Bruton v. U. S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. The objection was sustained. Later, a motion for mistrial was made, predicated upon the admission of the testimony. It was denied, but the court offered to instruct the jury to disregard any evidence of flight as having a bearing on the guilt of the defendant. Still later, and without objection, defendant testified to the following conversation between himself and Chambers:

"His door on the right hand side wouldn't open. He said, 'Doyle, let me out.' He said, 'Man,' when he seen the police with the lights on, he said, 'Man, let me out of the truck.' He said, 'You know the police is looking for me because I owe 88 days in the compound.' So I said, 'All right,' so I let him out."

■ We find nothing in these incidents which we would consider as fundamental error. True, the jury might infer a consciousness of guilt from Chambers' attempt to flee. But we think the logical impact of the testimony does not extend to an inference against the defendant. Nothing has been pointed to which would suggest a consciousness of guilt in the defendant relating to the murder simply because of the association of the two men. Even were it otherwise, the principle has too long been the law of this jurisdiction that a claimed error which is not supported by a timely objection will not be considered on appeal. See e.g., State v. Hudgens, 102 Ariz. 1, 423 P.2d 90. A defendant may not permit evidence to be introduced without objection and later make its admission grounds for a mistrial.

■ The defendant complains that prejudicial error was committed by the prosecuting attorney when he stated to the jury, "* * * The crime rate went up in Phoenix last year one hundred sixteen percent" and thereafter made two further references to the rising crime rate. We do not, however, think this is reversible error. Although there are precedents to the contrary, it has been repeatedly held that a reference by the prosecuting attorney in his argument to the prevalence of crime is not improper. The range of discussion and argumentation is very wide and matters of common knowledge may be referred to and allusion may be made to the prevalence of crime and the duty of the jury. People v. Burke, 18 Cal.App. 72, 122 P. 435; People v. Scarborough, 171 Cal. App.2d 186, 340 P.2d 76; State v. Elbert, 438 S.W.2d 164 [Mo.]; and see Anno., 78 A.L.R. at 1467.

For example, in State v. Elbert, the prosecuting attorney argued, "We hear an awful lot in this day and age about the rising crime rate and all the problems that are—." He was interrupted at that point by counsel for the defendant, who objected to the use of the words "rising crime rate." The court said:

"It is impossible to say just what the prosecuting attorney may have intended to argue prior to the objection because the argument was interrupted by the objection. Assuming that he then meant what he stated after the objection, it may be said that a prosecuting attorney is generally permitted considerable latitude in arguing the necessity of law enforcement and the responsibility resting on juries. [Citation] *The prosecuting attorney has a right to call attention to the prevalence of crime in the community (crime rate),* to urge the jury to do its duty and uphold the law, and to draw inferences from conditions resulting from failure to uphold the law. [Cita-

tions]" 438 S.W.2d 166. (Emphasis added.)

■ We agree that the reference to 116 percent goes beyond the realm of proper argument, because it alludes to a fact not in evidence, but we note that no objection was made at the time of the prosecution's argument. The issue was first raised after the jury had retired to deliberate upon the verdict. We repeat, it is the duty of counsel to make his objections at the earliest opportunity in order that the court may correct possible errors by appropriate instructions, thereby avoiding a mistrial. State v. Boozer, 80 Ariz. 8, 291 P.2d 786.

We also note that the trial court instructed the jury that "If any comment of counsel has no basis in the evidence, then you are to disregard that comment." This is sufficient to alert the jury to confine its deliberations to a consideration of the evidence at least lacking a specific request by the defendant to enlarge upon the instruction.

Defendant next urges as error a matter which we believe to be inconsequential: that the prosecution attempted to discredit the defendant by asking him, "You have never been in jail before this happened?" To this question, an objection was interposed and sustained by the court. Prior thereto, the defense had asked on cross-examination of a police officer who knew the defendant whether the police officer had ever had an altercation with the defendant, "legal altercations with him." This question was objected to by the prosecution. It, of course, tended to suggest that defendant was a law abiding individual, and had it been answered would have placed the defendant's character in evidence.

■ We think that both the defense and the prosecution closely skirted the strict bounds of propriety. Whether the police officer had ever had any altercations with the defendant was not the proper way to establish the good character of the defendant. It is improper to attempt to elicit testimony regarding the want of specific acts of misconduct. State v. Maxwell, 95 Ariz. 396, 391 P.2d 560. The State's question on whether defendant had ever been in jail tended to suggest that defendant had engaged in specific acts of criminal misconduct. Evidence of prior criminal conduct other than felony conviction and unrelated to the facts at issue is inadmissible. State v. Mercer, 13 Ariz. App. 1, 473 P.2d 803. The prosecution's only justification is that it pursued the same type of evidence previously sought to be suggested by defendant's question.

We think the trial court was in the best position to determine the effect of the prosecution's question upon the jury. As we stated in State v. King, 66 Ariz. 42, 182 P.2d 915, " * * * no case was ever so perfectly tried that it was not subject to some criticism." The test to be applied is whether there is a reasonable probability that had the asserted error not been committed, the verdict would have been different. State v. Hickson, 104 Ariz. 218, 450 P.2d 408. We do not believe the verdict would have been different.

Defendant finally urges that the admission of gruesome photographs of the deceased were prejudicial because their inflammatory nature outweighed their probative value. We have held many times that the admission of this type of exhibit is within the sound discretion of the trial court. See e.g., State v. Goodyear, 98 Ariz. 304, 404 P.2d 397. The lower court was of the opinion that the photographs were admissible because he believed they corroborated the State's theory of how the murder was committed and for the purpose of aiding the jury to fix the punishment. Cf. State v. Sherrick, 98 Ariz. 46, 402 P.2d 1, cert. den. 384 U.S. 1022, 86 S.Ct. 1938, 16 L.Ed.2d 1024; Burgunder v. State, 55 Ariz. 411, 103 P.2d 256; State v. Chambers, 102 Ariz. 234, 428 P.2d 91. The trial judge could have believed that the evidence had probative value to assist the jury to establish the cause of death since it was the medical examiner's testimony that he

could not with certainty establish whether the instrument which produced the strangulation was the wire looped around the victim's neck or the coat which was wrapped around his neck. Conceivably, if it was the wire, it could have caused the death after the robbery during the victim's struggle to free himself. Moreover, it was a jury question whether the stab wounds on the leg were likely to have been produced by a knife found in the defendant's possession.

■ We conclude that there was no abuse of discretion in the admission of the photographs introduced by the State.

*Judgment affirmed.*

HAYS, V. C. J., and UDALL, LOCK-WOOD and CAMERON, JJ., concur.